UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CDS BUSINESS SERVICES, INC. *doing business as* NEWTEK BUSINESS CREDIT,

                                    Plaintiff,

      -against-

H.M.C., INC. and KARA DiPIETRO,

                                  Defendants.
------------------------------------------------------------------X

**For Online Publication Only**

**MEMORANDUM AND ORDER**

19-CV-5759 (JMA) (LGD)

FILED
CLERK
2:27 pm, Dec 21, 2022
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**AZRACK, United States District Judge:**

Before the Court is the motion of Defendants H.M.C., Inc. and Kara DiPietro ("Defendants") for reconsideration and vacatur of this Court's September 28, 2021 Order (the "September 28 Order" (ECF No. 36)) pursuant to Federal Rule of Civil Procedure 60(b)(2). Through the September 28 Order, this Court adopted in its entirety the May 18, 2021 Report and Recommendation of Magistrate Judge Steven I. Locke (the "R&R" (ECF No. 33)), and granted the motion of Plaintiff CDS Business Services, Inc. ("Plaintiff") for summary judgment as to liability only. For the following reasons, Defendants' motion is DENIED.

**A.    Background**

The Court assumes familiarity with the background of this case, which is set forth in the September 28 Order.[1] (See ECF No. 36.) On January 14, 2021, Plaintiff filed its fully briefed motion for summary judgment, which the Honorable Sandra J. Feuerstein[2] referred to Magistrate Judge Steven I. Locke for a report and recommendation that same day. (See ECF Nos. 29-31;

---

[1] All capitalized terms used in this Order have the same meaning as defined in the September 28 Order.

[2] This matter was transferred from Judge Feuerstein to this Court on June 3, 2021. (See June 3, 2021 Electronic Order.)

January 14, 2021 Electronic Order.) On May 18, 2021, Magistrate Judge Locke entered the R&R, where he recommended that Plaintiff's motion for summary judgment be granted in its entirety because: (1) HMC breached the parties' accounts receivable agreement (the "Agreement") when it received from its customers – but failed to remit to CDS – over $500,000 in principal, while also refusing to pay additional fees and charges owed to Plaintiff under the Agreement; (2) DiPietro breached the parties' guaranty by failing to make payment on HMC's behalf after it defaulted under the Agreement; and (3) Defendants' failure to deliver payments received from specified HMC customers to CDS, as required under the Agreement, tortiously interfered with the contractual relationships between CDS and those customers. (See R&R at 13-24.) In reaching this conclusion, Magistrate Judge Locke rejected Defendants' affirmative defense that the Agreement should be found void ab initio because "[the] Administrative Processing and Collateral Monitoring Fees are 'disguised interest' and, once factored into the Agreement's interest calculation, yield a criminally usurious interest rate." (Id. at 14.)

Defendants objected to the R&R on June 1, 2021, and on September 28, 2021, after reviewing the parties' arguments, this Court adopted the R&R in its entirety and granted summary judgment in Plaintiff's favor as to liability. (See generally ECF Nos. 34-35; September 28 Order.) On January 13, 2022, Plaintiff's request for damages was referred to Magistrate Judge Locke to: (1) hold an inquest to determine the appropriate amount of damages, if any; and (2) to issue a further report and recommendation on this issue. (See January 13, 2022 Electronic Order.) The parties appeared before Magistrate Judge Lee G. Dunst[3] for a damages hearing on August 30, 2022. (ECF No. 47.)

---

[3] This matter was transferred from Magistrate Judge Locke to Magistrate Judge Dunst on June 7, 2022. (See June 7, 2022 Electronic Order.)

According to Defendants, allegedly "new evidence" was adduced at the damages hearing that is relevant to Defendants' usury defense. Defendants now ask the Court to reconsider – and in essence, vacate – the September 28 Order, pursuant to Rule 60(b)(2), based on this "new evidence." (See generally Defs.' Mot. (ECF No. 50).) The alleged new evidence at issue consists of a damages spreadsheet prepared by CDS for the damages hearing and the hearing testimony of Albert Spada, the President of CDS. According to Defendants, this new evidence shows that the Collateral Monitoring Fee qualifies as interest for purposes of a usury analysis because it establishes that: (1) CDS "account[ed] for the Collateral Monitoring Fee as interest" on its damages spreadsheet and Spada's testimony confirmed that he considered this fee to be interest; (2) although the Collateral Monitoring Free is purportedly "meant to reimburse CDS for its services in collecting and analyzing receivables under the [Agreement]," CDS stopped performing such services in March 2019; and (3) notwithstanding the fact that the services performed in connection with the Collateral Monitoring Fee stopped as of March 1, 2019, CDS continued to assess the Collateral Monitoring Fee through June 1, 2022. According to Defendants, these facts establish that the Collateral Monitoring Fee constitutes interest and, once, this interest is accounted for, the total interest charged by CDS exceeds the 25% usury cap.

Defendants' motion also makes passing references to the Administrative Fee, although none of Defendants' arguments for vacatur of the September 28, 2021 Order relate to that fee.

**B.**   **Legal Standard**

Federal Rule 60 "prescribes procedures by which a party may seek relief from a final judgment." Azeez v. City of New York, No. 16-cv-342, 2021 WL 3578500, at *6 (E.D.N.Y. Aug. 13, 2021) (quoting House v. Sec'y of Health & Hum. Servs., 688 F.2d 7, 9 (2d Cir. 1982)). Rule 60(b) provides the following six independent grounds, upon which federal courts may grant relief from a final judgment or order:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b); cf. Gil v. Frantzis, No. 17-cv-1520, 2019 WL 5694074, at *5 (E.D.N.Y. Aug. 22, 2019), report and recommendation adopted, 2019 WL 4784674 (Oct. 1, 2019); see also Burda Media, Inc. v. Viertel, 417 F.3d 292, 298 (2d Cir. 2005) ("Federal Rule of Civil Procedure 60(b) governs motions for relief from a final judgment or order and provides six independent grounds for relief."). Under Rule 60(c), motions made pursuant to Rule 60(b) "must be made within a reasonable time," and motions based on grounds (1), (2), and (3) must be made "no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

      Granting a motion pursuant to Rule 60(b) constitutes "extraordinary judicial relief" and should be "invoked only upon a showing of exceptional circumstances." Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986). "The burden is on the moving party to demonstrate that it is entitled to relief, and courts '[g]enerally…require that the evidence in support of the motion to vacate a final judgment be highly convincing.'" Thai-Lao Lignite (Thai.) Co. v. Government of the Lao People's Democratic Republic, 864 F.3d 172, 182 (2d Cir. 2017) (alterations in original) (quoting Kotlicky v. U.S. Fid. & Guar. Co., 817 F.2d 6, 9 (2d Cir. 1987)). "The decision whether to grant a party's Rule 60(b) motion is committed to the sound discretion of the district court[,]" Stevens v. Miller, 676 F.3d 62, 67 (2d Cir. 2012) (internal quotation and citation omitted), and such a motion "may not be used as a substitute for appeal," Manney v. Intergroove Media GMBH, No. 10-cv-4493, 2014 WL 1224171, at *1 (E.D.N.Y. Mar. 24, 2014).

**B.     Discussion**

Initially, Defendants argue that certain allegedly "new evidence" adduced at the damages hearing—namely, CDS's damages spreadsheet and the testimony of its president, Spada—warrants vacatur of this Court's September 28 Order pursuant to Rule 60(b)(2).  (Defs.' Mem. (ECF No. 51) at 1, 9-10.)  Defendants insist that this evidence establishes that the Collateral Monitoring Fee constitutes disguised interest for purposes of the usury cap.[4]  For the reasons stated below, the Court finds Defendants' arguments unavailing, because they have not satisfied the "strict" standard for reconsideration.  Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995).  Therefore, their motion is denied.

Federal Rule of Civil Procedure 60(b)(2) allows a court to vacate a previously entered final judgment based on "newly discovered evidence that, with reasonable diligence, could not have been discovered."  Fed. R. Civ. P. 60(b)(2).[5]  Motions brought pursuant to this rule are generally disfavored and only "properly granted only upon a showing of exceptional circumstances."  United States ex rel. Brutus Trading, LLC v. Std. Chartered Bank, No. 18-cv-11117, 2021 WL 4772142, at *4 (S.D.N.Y. Oct. 13, 2021) (quoting United States v. Int'l Bhd. of Teamsters, 247 F.3d 370, 391 (2d Cir. 2001)); see also Reese v. McGraw-Hill Cos., Inc., 293 F.R.D. 617, 621 (S.D.N.Y. 2013), aff'd sub nom. Reese v. Bahash, 574 F. App'x 21 (2d Cir. 2014).  A party seeking relief under Rule 60(b)(2) has the "onerous" burden of demonstrating four elements:

---

[4] Defendants' motion for vacatur never squarely argues that new evidence from the damages hearing establishes that the Administrative Proceeding Fee is disguised interest for purposes of the usury cap. Accordingly, any such arguments have been waived. Moreover, even if Defendants did seek to raise such an argument, none of the evidence Defendants cite concerns the Administrative Processing Fee.

[5] While the underlying finding as to liability is not a "final judgment" under of Rule 60(b), the Second Circuit has observed each district court's "inherent power to reconsider and modify its interlocutory orders prior to the entry of judgment, whether they be oral, or written," United States v. LoRusso, 695 F.2d 45, 53 (2d Cir. 1982) (internal citations omitted), and multiple courts within this Circuit have relied on Rule 60(b)'s framework and principles to entertain and analyze procedurally deficient reconsideration motions.  See, e.g., Stern v. Highland Lake Homeowners, No. 18-cv-4622, 2021 WL 1164718, at *5 (S.D.N.Y. Mar. 26, 2021); Gill v Hoadley, No. 01-cv-323, 2007 WL 1341468, at *5 (N.D.N.Y. May 4, 2007). This Court does so as well.

> (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

Brutus Trading, 2021 WL 4772142, at *4.  Moreover, these requirements must be "strictly met" and any newly discovered evidence must be "highly convincing."  Giurca v. Montefiore Health System, Inc., et al., No. 18-cv-11505, 2021 WL 2739061, at *4 (S.D.N.Y. July 1, 2021) (quoting Apex Employee Wellness Services, Inc. v. APS Healthcare Bethesda, Inc., No. 11-cv-9718, 2017 WL 456466, at *8-10 (S.D.N.Y. Feb. 1, 2017)).  Applying these standards, the Court concludes that Defendants have failed to demonstrate that this allegedly "new evidence' warrants vacatur of this Court's September 28 Order pursuant to Rule 60(b)(2).

In support of their motion, Defendants claim that the following evidence, which was adduced at the damages hearing, warrants vacatur of the Court's September 28 Order:  (i) oral testimony of CDS's president (Spada) that CDS allegedly (a) "account[ed] for the Collateral Monitoring Fee as interest" and (b) used the Collateral Monitoring Fee "to reimburse CDS for its services in collecting and analyzing receivables under the [Agreement]," even though such services apparently stopped on March 1, 2019"; and (2) CDS's continued assessment of the Collateral Monitoring Fee through June 1, 2022, despite the fact that the relevant services performed in connection with the Collateral Monitoring Fee stopped as of March 1, 2019.  Based on the above, Defendants contend that these fees should be included in the Agreement's interest rate calculation, which allegedly "imposed an effective interest rate in excess of 25%, rendering it usurious, void and unenforceable as a matter of law." (See Defs.' Mem. at 2.)  The Court addresses each of Defendants' arguments in turn.

Initially, the Court rejects Defendants' argument that Spada's affidavit and damages-hearing testimony can serve as "newly discovered evidence" that would warrant the September 28

6

Order's vacatur. Defendants have failed to establish that Spada's testimony was evidence that "could not have been discovered in time" through Defendants' exercise of "reasonable diligence" during discovery. See Brutus Trading, 2021 WL 4772142, at *4; Reese v. Bahash, 574 F. App'x at 21. Indeed, Defendants fail to establish that they: (i) sought – and were denied – this information during discovery; or (ii) were not permitted sufficient time to conduct discovery in order to support their case. (See generally Defs.' Mem.) Defendants have similarly failed to demonstrate that they were not aware of the information contained within the spreadsheet submitted in conjunction with Spada's testimony. (See generally Defs.' Mem. at 9-11.) Simply put, Defendants have not demonstrated that they exercised "reasonable diligence" during discovery, much less that these efforts were intentionally stymied by Plaintiff. This failure, as well as Defendants' thinly veiled attempt to "re-litigate the merits of the underlying dispute on [their] motion for reconsideration," are sufficient grounds to deny Defendants' motion for reconsideration. Women's Integrated Network, Inc. v. U.S. Specialty Ins. Co., No. 08-cv-10518, 2011 WL 1347001, at *1 (S.D.N.Y. Apr. 4, 2011), aff'd sub nom. Women's Integrated Network, Inc. v. U.S. Speciality Ins. Co., 495 F. App'x 129 (2d Cir. 2012); see also Shrader, 70 F.3d at 257 (explaining that a motion for reconsideration "should not be granted where the moving party seeks solely to relitigate an issue already decided.").

Finally, even assuming, arguendo, that the purportedly new evidence Defendants cite could somehow meet the high bar for reconsideration, the Court would, upon reconsideration, still adhere to its original ruling and conclude that Defendants do not have a usury defense that survives summary judgment. The "new" evidence that Defendants is, at best, additional proof to support their argument that the Collateral Monitoring Fee constitutes disguised interest. Judge Locke's R&R, however, concluded that it was unnecessary to resolve the question of whether the Collateral Monitoring Fee constitutes interest because even if it did, the total interest rate under the

7

Agreement did not exceed the 25% usury cap. Even assuming that Defendants' "new" evidence could establish that the Collateral Monitoring Fee constitutes disguised interest, the 25% usury cap would still not be breached. As Defendants note, the vast majority of the interest due under the Agreement is default interest. The only way in which inclusion of the Collateral Monitoring Fee might potentially cause a breach of the 25% usury cap would be if the Court were to also include the Agreement's default interest rate (10% above the prime rate) in the interest calculation. However, the higher default interest rate cannot be considered "interest" for purposes of the usury cap because, as Judge Locke previously explained, "New York's usury laws do not apply to defaulted obligations."[6] (R&R at 17.) Accordingly, Defendants' usury claim still fails.

In a footnote, Defendants assert that their expert should have an opportunity to recalculate the Agreement's "true interest rate in light of the new evidence adduced during the damages hearing." (Defs.' Mem. at 9, n.1.) This argument is absurd. Defendants have not shown how the Agreement's regular interest rate (5% above the Prime Rate) and the Collateral Monitoring Fee (8.4% per annum), when added together, would ever exceed 25% at any point during the time period at issue.

At bottom, while Defendants may disagree with this Court's adoption of Magistrate Judge Locke's well-reasoned R&R, as well as its judgment as to Defendants' liability in this matter, they have not raised any controlling decisions or otherwise new evidence "that might reasonably be expected to alter the conclusion reached by the court." Shrader, 70 F.3d at 257. Accordingly, the Court denies Defendants' motion on this alternate basis.

---

[6] Although Judge Locke did not explicitly address whether the Agreement's higher default interest rate constitutes "interest" for purposes of the usury cap, his decision implicitly (and correctly) assumed that it did not. Notably, Judge Locke did explicitly find that the Administrative Processing Fee was not interest for purposes of the usury cap because, inter alia, the Administrate Processing Fee is a "defaulted obligation" to which the usury laws do not apply.

While the Court denies Defendants' request to reconsider and vacate its earlier liability determination concerning Defendants' usury defense, the issue of damages is still pending before Magistrate Judge Dunst. Plaintiff has filed a post-hearing submission concerning damages and Defendants' recent filings contend that the Administrative Processing Fee and Collateral Monitoring Fee constitute unenforceable penalties. These damages issues remain pending before Judge Dunst.

### III. CONCLUSION

For the foregoing reasons, Defendants' motion for reconsideration and vacatur of this Court's September 28 Order on liability is DENIED in its entirety. Any outstanding issues regarding damages remain within the purview of Magistrate Judge Dunst's forthcoming report and recommendation.

**SO ORDERED.**

Dated: December 21, 2022
Central Islip, New York

                    /s/   (JMA)
                    JOAN M. AZRACK
                    UNITED STATES DISTRICT JUDGE